Uhl v. Harvey.

---

No. 7755.

## UHL v. HARVEY.

PARTNERSHIP.—*Retiring Member.—Continued Liability.—Duty to Give Notice.*—One whose membership in a partnership has been publicly advertised in the community where the business has been and is prosecuted owes a duty on retiring to give notice thereof, not merely to former customers, but to the public, who may give future credit on his supposed responsibility.

SAME.—*Estoppel.*—Where a retiring partner fails to give notice of his retirement, his liability continues on account of such failure, and he is estopped from denying his liability to those who give the concern credit on the faith of his supposed connection.

SAME.—*Negligence.*—It is immaterial whether the failure to give the notice was wilful or negligent, or was the result of causes unforeseen and beyond control.

SAME.—*Certificate of Deposit.—Banking Company.—Pleading.*—A complaint on a certificate of deposit, issued by an unincorporated banking firm, is good against a defendant, which shows his connection with the firm and the public advertisement of the fact prior to January, 1874, the want of published notice of his retirement, and that the plaintiff, who had known of his membership, but not of his retirement, in February, 1876, made the deposit sued for in the usual course of business, and in the belief that the defendant was yet a member of the firm, though the plaintiff had had no dealings therewith while the defendant was in the firm.

SAME.—*Pleading.*—In such case the defendant was liable to the plaintiff, if at all, as a maker of the certificate, because estopped to deny his membership in the firm, and consequently liable on those paragraphs of the complaint which charged him as maker.

Uhl *v.* Harvey.

SAME.—*Evidence.*—Under the sworn denial of such paragraphs, the facts concerning the defendant's withdrawal, his failure to give notice of it, and the plaintiff's knowledge on the subject, were all admissible. The other paragraphs were unnecessary.

SAME.—*Presumption.*—There was no legal presumption that the defendant had ceased to be a member of the firm, which continued in business at the same place and under the same name, because he stopped a newspaper notice of his connection.

SAME.—*Notice of Dissolution.*—Continued liability is escaped, not by the partner ceasing to hold himself out as such, but by giving affirmative notice of the dissolution of the firm, or of his withdrawal.

SAME.—*Public Advertisement of Membership.*—A member of a partnership is responsible for the public advertisement of his membership in the place of his residence and of the firm's business, though done by his partners without his personal knowledge; and, after his retirement, he will be responsible for the continued publication of the advertisement, though without his knowledge. The mere stopping of such publication when he learned of it was not enough. He was bound to publish such unequivocal notice as he could to prevent further misunderstanding.

SAME.—*Evidence.*—Evidence that such partner had agreed with his co-partners to keep his retirement secret, and that he told different stories on the subject, was admissible upon the issue whether the appellant was in truth a member of the firm when the plaintiff made his deposits.

SAME.—*Reports of Co-partnership.*—*Withdrawal.*—Current report was not admissible to show the partnership; but it was competent on the subject of notice to the plaintiff of a partner's withdrawal.

SAME.—*Corporation.*—*Stockholder.*—There may be stockholders in a partnership. An advertisement which showed that the defendant and others were stockholders in the "People's Bank," and responsible for all its liabilities, showed it to be a partnership, rather than a corporation.

SPECIAL INTERROGATORIES.—*Practice.*—*Defects Cured.*—Special interrogatories in reference to particular facts within the issues may be submitted to the jury, but not questions covering entire issues. It is not error to refuse an immaterial interrogatory. Errors may be cured by the answers to interrogatories.

PLEADING.—*Non Est Factum.*—*Practice.*—When there is an answer of general denial, or *non est factum*, a special argumentative denial or *non est factum* might be properly struck out; but, if left in such plea does not demand or admit of a reply. The ruling upon a demurrer to a reply filed to such answer presents no question.

SAME.—While the code requires the complaint to state the facts which constitute the cause of action, it is not good pleading to anticipate matters of defence.

From the Miami Circuit Court.

*M. Winfield, Q. A. Myers, D. C. Justice* and *W. D. Owen,* for appellant.

*G. E. Ross,* for appellee.

Woods, J.—Suit by the appellee against the appellant, Joseph Uhl, and others who have declined to join in the appeal. The action was based on four certificates of deposit, there being two paragraphs of complaint predicated on each certificate, and the difference between these paragraphs being that in one it is charged that the defendants, at the time of making the certificate, were partners, doing a banking business, under the firm name of "People's Bank," and as such, in the course of their business, executed to the plaintiff, for money deposited, the certificate sued on; while in the other paragraph, instead of charging that appellant, Uhl, was a member of the partnership when the certificate was made, it is sought to hold him as a retired partner who had failed to give notice of his withdrawal from the firm. The second, fourth, sixth and eighth paragraphs are drawn upon the latter theory, and as they are alike, excepting the dates and amounts of the certificates on which they are founded, we need copy but one, which is as follows:

"For amended eighth paragraph of complaint, the plaintiff complains of the defendants and says: That on the 1st day of January, 1874, and for more than a year previous thereto, the defendants were partners, doing business together under the firm name of 'People's Bank,' as private bankers in the city of Logansport, Indiana; that it was the business of said firm to receive money on deposit, and to pay interest on all moneys deposited at a rate agreed upon between the parties; that William H. Standley acted as president, and William H. Whiteside acted as cashier, of said firm; that said Whiteside, as cashier, was authorized by the members of said firm to receive money on deposit, contract for the rate of interest to be paid on such deposits, and to give the obligation of said firm for the payment thereof; that the defendant Joseph

Uhl, during all that time, held himself out to the plaintiff, and to the public in general, as a member of said firm by public notice in a newspaper of general circulation, published in the city of Logansport, whereby the defendant Joseph Uhl, and each of the other defendants, held themselves out to the plaintiff, and the public in general, as individually responsible for all the liabilities of said firm; that on the 20th day of April, 1877, this plaintiff, who was personally acquainted with the defendant Joseph Uhl, and knew him to have been a member of said firm, and without any knowledge that he had ceased to be a member of said firm, and without any publication of notice of his withdrawal therefrom, and under the full belief that 'he still remained a member thereof, and relying upon the said Joseph Uhl continuing to be a member thereof, and upon his responsibility as such, deposited with said firm the sum of one hundred and forty dollars, for which sum the defendants gave their certificate of deposit of that date, signed by William H. Whiteside, as cashier, payable twelve months after date, with interest at the rate of eight per cent. per annum, whereby they promised to pay the plaintiff said sum of one hundred and forty dollars, with interest at the rate of eight per cent. per annum, twelve months after the date thereof, a copy of which is filed herewith, marked Exhibit D, as part of this complaint."

The certificates on which the other paragraphs are based bear date respectively, February 23d, 1876, and April 6th and 9th, 1877. Demurrers to each paragraph were overruled and exceptions saved. A verified general denial and other pleas were filed. There was, however, in the special pleas nothing which was not provable under the general denial, because the matters averred were inconsistent with the allegations of the complaint, and not in confession and avoidance thereof. No replies, therefore, were necessary or admissible, and the rulings on the demurrers to the replies which were filed present no question. *State, ex rel.,* v. *Blair,* 32 Ind. 313.

Indeed, as it seems to us, the issues in the case and the trial of it might well have been simplified, and the ends of justice correspondingly promoted, by the omission from the complaint of the second, fourth, sixth and eighth paragraphs. They are drawn upon a mistaken theory. While it is true, under the code, that the complaint must state the facts constituting the cause of action, this does not mean that a full history of the transaction out of which the action arises must be given. It is not commendable pleading to anticipate in the complaint matters of defence and reply thereto, as is done in the above named paragraphs. If the appellee was entitled to judgment against the appellant, it was because the appellant was bound by the contracts sued on, as if he made them. There is in the books and cases some confusion in reference to the principle upon which rests the responsibility of a retiring partner. Parsons Partnership, 411; Gow Partnership (3d Am. ed.), 240. In *Cregler* v. *Durham*, 9 Ind. 375, it is said: "He was not liable as a contracting party, because he was not, in fact, a member of the firm when the contract was made. Hence he was not a party to it. If liable at all, then, it must be upon the ground that the plaintiff had a right to treat him as a member, and give credit to him as such."

Here is a manifest inconsistency. The following is a better statement:

The general ground of liability of a person as a partner, who is not so in fact, is that he has held himself out as such to the world, or permitted others to do so, and that by reason thereof he is estopped from denying that he is one, as against persons who have in good faith dealt with the firm or with the person so held out as a member of it. *Reber* v. *Columbus, etc., Co.*, 12 Ohio St. 175; *Drennen* v. *House*, 41 Pa. St. 30; *Sherrod* v. *Langdon*, 21 Iowa, 518; 3 Kent Com. 66.

And it will not do to say, as has sometimes been done, Gow, *supra*, that the estoppel springs from the retiring partner's "negligent conduct in forbearing to give notice." The liability continues because of the failure to give the proper no-

tice of retirement, and it is immaterial whether the failure. was wilful or negligent, or arose from causes unforeseen and beyond control. If negligence were the test, then in all cases inquiry might have to be made into alleged excuses for the failure. But the rights of a creditor can not be made to depend on the result of such an inquiry. The only just rule is an absolute requirement that the retiring partner shall give proper notice of his withdrawal, and, failing to do so, from whatever cause, must suffer the consequences. There is no injustice in this. Better than any other he knows, or may be presumed to know, the risk of continued liability, and if the emergency requires it he can take the necessary steps to give special notice to any customer, old or new, until adequate general notice can be published.

Returning to the point under consideration, it was enough that the plaintiff should have charged the appellant as a maker of the certificates, as was done in the first, third, fifth and seventh paragraphs of the complaint, the sworn denial of which presented the whole question of liability, and made admissible all the evidence adduced, whether to show the partnership, the facts concerning the appellant's retirement, and the alleged failure to give notice thereof, or the appellee's knowledge on the subject. But on the strength of the answers of the jury to interrogatories, showing that the appellant had withdrawn and was not a member of the firm when the certificates were issued, the court, on the appellant's motion, gave judgment in his favor upon the last named paragraphs, and rendered judgment for the appellee upon the other paragraphs, whose sufficiency must therefore be determined, as though they alone constituted the complaint.

The substance of the objections made to them is, *first*, that it may be presumed, for aught that is averred, that from and after January 1st, 1874, the appellant, Uhl, ceased to hold himself out as a partner in the business; and that, after the lapse of so long a time, the appellee, who had not before had any transaction with the firm, had no right to presume on a

continuance of his membership, the name of the firm being such as to afford no indication on the subject; and, *second*, that while the plaintiff avers want of knowledge of the retirement of the appellant, he does not deny knowledge that Standley, Atkinson, Whiteside or Thompson had retired, and that the firm had thereby been dissolved.

These objections are not sound. There is no legal presumption that the appellant ceased to be a member of a firm whose business continued uninterruptedly, because he ceased to keep up a newspaper notice of his connection. Once the public were well informed of the membership of the firm, there was probably no profit in continuing to publish the notice; and the rule is that the retiring partner escapes continued liability, not by ceasing to hold himself out as a partner, but by giving affirmative notice of the dissolution, or of his withdrawal from the membership of the firm. As to the second point, the parties named are made defendants in the case, and the necessary inference from the allegations made is that they had continued in the partnership; and, in the absence of averment to that effect, there is certainly no presumption that others not named had come into the firm. The paragraphs show the appellant's connection with the firm, and the public advertisement of the fact prior to January, 1874, the want of publication of notice of his retirement, and that the appellee, who knew of his membership but not of his retirement, gave credit to the firm in the usual course of its business, in the belief that the appellant was a member, and this is enough to entitle the appellee to recover, notwithstanding he had had no dealings with the firm during the time when the appellant was a member. One whose membership in a business partnership has been publicly advertised in the community where the business has been and is prosecuted, owes a duty, on retiring, to give notice thereof, not merely to the customers who have had actual transactions, but to the public, who may be misled into giving future credit, on the supposed responsibility of him who retires. Parsons Partnership,

412; Collyer Partnership, sec. 530; 1 Ewell's Lindley Partnership, 407, 415 and notes.

There was no available error in sustaining demurrers to any of the answers, because, as already stated, they contained nothing which was not provable under the sworn general denial. The answers to which the demurrers were overruled were nothing but special or argumentative denials of matters averred in the complaint, and might well have been stricken out; but, being allowed to stand, they closed the issue, and neither called for nor admitted of reply. *State, ex rel. Griswold,* v. *Blair, supra.*

Exceptions were saved to a number of the instructions given to the jury.

The objection made to the fourth is not well founded in fact. As stated in the brief, the last clause of the instruction reads, "but the law does require that he make his retirement as notorious as was the fact of his membership." The record, however, shows that the court gave it in this wise: "That he should use all reasonable efforts to make his retirement as notorious," etc., which is plainly quite a different proposition, but whether right or not we need not decide, because not discussed in the brief.

The sixth instruction, after enunciating a rule in general language, to which no objection is made, proceeds as follows: "So in this case, if the defendant Uhl, by his words or conduct, induced the plaintiff to believe him to be a member of the People's Bank, and the plaintiff, upon such representations, made the deposits evidenced by the certificates sued on, he is liable as fully as if he were in fact a member, for he negligently left the plaintiff to believe him still a member, and to deal with the firm upon that belief, and I state it as the law in this case, that it is not necessary that the defendant Uhl personally made such representations; but if the plaintiff deposited his money with the said People's Bank, and previous to that time it was a matter of public notoriety

that defendant Uhl was a member of said firm, and such notoriety originated through him, *or his co-partners*, in that case it is his duty to prove that he informed the public of his retirement, and if he has failed to do that, then the public was justified in believing him to be a member."

In this connection it may be stated that the appellant has saved his exception to the refusal of the court to give the following instruction:

" No. 17. If you find that these advertisements were made without the knowledge or consent of Uhl, and he, as soon as he heard of them, caused them to be taken out of the papers, then I charge you as the law that he is not bound by them. No person is bound by the act of another, unless done by his authority, or with his knowledge without objection."

The position of the appellant, in reference to the instruction given, is sufficiently indicated by the terms of that which was refused; and if, as claimed, the jury was in effect instructed or led to suppose that the appellant might be held responsible for acts which he neither did nor authorized another to do, and had no *knowledge of their being done*, we could not hesitate to declare that material error had been committed. But, properly construed, with reference to the evidence in the case, it is clear that by the notoriety mentioned as having " originated through him or his co-partners," reference was had to the acts of himself or co-partners while they bore that relation to each other; and the proof being clear and undisputed that the appellant lived in Logansport, where the business was conducted, and where he was publicly advertised as a stockholder, and with the other stockholders as personally responsible upon the liabilities of the company, he was clearly responsible for the notoriety so produced, whether he or his partners caused the advertisement to be put into the daily paper where it was published. The evidence went farther, however, and showed that the advertisement, a copy of which will be given further along, was kept in the paper after the appellant's withdrawal

and until March, 1876, or later, when, upon the order of the appellant, it was stopped, or his name omitted therefrom; and it is to this fact that the instruction, which the court refused to give, was intended by the appellant to be addressed. But the instruction was wrong and was properly refused. It was the unquestioned duty of the appellant to give notice of his retirement immediately upon its occurrence, if not in anticipation of the fact, and this duty certainly included the corresponding obligation on his part to see to it that the advertisements of the firm, which showed his connection, should be discontinued. His ignorance, from inattention or from whatever cause, that the publication was continued, could not exonerate him. His position called for affirmative action, the giving of unequivocal notice of his retirement, which implies the duty of withdrawing all contradictory advertisements which were known, or, from the circumstances, must be presumed to have been known to him. As applied to the evidence, therefore, there was no error committed in reference to these instructions.

The tenth instruction given was this:

" The law requires that upon one member retiring from a partnership he must give notice of his retirement, and in giving notice of his retirement he must act in good faith. Now, if you find that Joseph Uhl, when he retired from the People's Bank, before that agreed that he would keep his retirement a secret, and he did keep it a secret, then he did not act in good faith in his retirement; but, by his agreement to keep his retirement secret, he consented that he should continue to be represented as a member while that agreement continued."

It is true, as counsel contend, that it is not an absolute requirement of the law that notice be given, but only in case the one retiring was known as a partner, and in favor of an old dealer, or a new dealer who knew that he had been a member, but these are points sufficiently explained by other instructions which were given, and, in view of the evidence, this instruction was entirely proper. If, as there was some

evidence tending to show, the appellant, before retiring, agreed to keep the fact secret, and did afterwards keep it secret or withhold notice of the fact from the public, it was a wrongful act, which should make him liable to any one thereby misled into dealings with the firm, in the belief that he was a member.

The eleventh instruction is as follows:

"If you find that Joseph Uhl retired in 1874, that he told some parties before the plaintiff commenced dealing with the firm that he had retired, and you also find that to others he represented himself as being a member, that is a fact which you may consider in determining whether or not he acted in good faith in giving notice of his retirement. I also say to you that it is a matter of fact for you to determine whether or not Mr. Uhl acted in good faith, and whether or not the notice he gave, if you find that he gave any notice at all, is sufficient."

Counsel insist that it was not an issue in the case, nor material to be considered, whether the appellant acted in good faith, and that therefore it was not proper to give this instruction. It was, however, a question in the case whether the appellant was a partner when the certificates were issued. He had been a partner, and unless he had retired was yet; but if he retired in bad faith, endeavoring to leave the concern the credit of his name, and yet to escape liability, then his bad faith defeated his purpose, and left him liable in fact as well as in appearance. It is true that the appellee needed not, under the issues, to prove so strong a case in order to prevail, but, nevertheless, he had a right to make the attempt and to have it submitted in that view to the jury.

Among the causes assigned for a new trial is the alleged error of the court in permitting the introduction of testimony that "it was currently reported in Logansport that Uhl was a member of the firm of People's Bank up to the fall of 1875." The only point made against its introduction, however, is that it was not admissible for the purpose of showing either the existence of the partnership, or the appellant's con-

nection therewith. In this position counsel are unquestionably right. *Earl* v. *Hurd*, 5 Blackf. 248; *Cregler* v. *Durham*, 9 Ind. 375; *Macy* v. *Combs*, 15 Ind. 469; *Brown* v. *Crandall*, 11 Conn. 92; *Halliday* v. *McDougall*, 20 Wend. 81. But aside from the instructions of the court, which limited the application of this testimony to the subject of notice of the partnership and of the appellant's retirement therefrom, to which it was clearly relevant and competent, the jury found, in answer to an interrogatory, that the appellant was not a partner after April, 1874, and so it is clear that the evidence did not harm the appellant in that respect.

The advertisement already referred to, and which was shown to have been published in the *Daily Star* while the appellant was a partner and after his retirement, was of the tenor following:

" People's Bank Stockholders: Josephus Atkinson, Joseph Uhl, William H. Whiteside, George Strecker, William H. Standley, E. R. Thompson, Delaware, Ohio. Do a general banking business. Organized under the laws of the State, making every stockholder individually responsible for all liabilities." And in reference to this the appellant requested the following instruction, and others involving the same idea, which were refused:

"No. 15. The plaintiff has introduced in evidence an advertisement in the Logansport *Daily Star*. The legal construction of those advertisements is for the court and not for the jury. Those advertisements do not give public notice of the existence of a partnership known as 'People's Bank.' But the legal effect of them would be to advise the public that there was a corporation organized, pursuant to law, in which Uhl is a stockholder. The plaintiff had no right to rely upon such notices to give credit to Uhl as a member of a firm known as 'People's Bank,' and if you find from the evidence that the only notice the plaintiff had, when he commenced dealing with the bank, was by those advertisements, and that Uhl had at that time retired from the firm, the court charges

you that the plaintiff had no right to rely upon the same as a public notice of his being a member of the firm."

"We insist," says counsel, "that the evidence was incompetent. The plaintiff did not show that Uhl ever authorized the publication or that he ever had any notice of it; therefore it was not competent. 2d. It did not tend to prove a partnership, or that Uhl was a partner. Both of these objections were pointed out."

As we have already said in substance, there was evidence not only to warrant, but such as required the conclusion, that the appellant was responsible for the advertisement from the time its publication began until it was suppressed upon his order, and even for its continued influence thereafter, because of his failure to give such notice as was calculated to remove the false impression made by the continued publication of the notice.

The objection that it did not tend to show a partnership, but a corporate organization, is still less tenable. There may be shares of stock and stockholders in a partnership as well as in a corporate body. Such in fact was the organization of the People's Bank. Lindley's very elaborate work is designed mainly to explain the law of partnership as applicable to stock companies not incorporated. Besides, the notice under consideration declared every stockholder individually responsible for all liabilities, which is true of a partnership, but not true of an incorporated bank, the shareholders in which, under the law of this State, are liable only "to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares." 1 R. S. 1876, p. 165, sec. 13.

It is further claimed that the court erred in refusing to submit to the jury, to be answered in case they found a general verdict, the following interrogatories:

"2. Did the defendant Joseph Uhl make either of the instruments in writing sued on?

" 3. Did the defendant Joseph Uhl authorize any one to make for him either of the instruments in writing sued on ?

" 10. If the plaintiff had any other notice or knowledge that Joseph Uhl was a member of the firm of the 'People's Bank,' except the notice set out in question No. 9, state what it was.

" 12. Did not the fact of Uhl's retirement become a matter of public notoriety in business circles in the city of Logansport, where the firm did business during the years 1875, 1876 and 1877 ?

" 18. Did not the plaintiff believe at and during the time he was dealing with the firm, that it was a corporation or association, and not a partnership ? "

The Code, sec. 336, authorizes that the jury be required " to find specially upon particular questions of fact; " but the first and second of these interrogatories call for a finding upon the entire and principal issue in the case, that is, whether the appellant executed the writings sued on. Such questions are sufficiently answered by the general verdict, and are not the proper subject of special interrogatories.

Questions 12 and 18 are in substance the same as Nos. 7 and 17, which were answered, and we do not perceive that it was material or could in any way have affected the result, had the tenth interrogatory been submitted and answered by any pertinent response.

In answer to the questions which were submitted, the jury found, in substance, that the appellant retired and ceased to be a partner from and after April, 1874, but that his retirement was not a matter of public notoriety in the neighborhood where the firm did business at or before February 26th, 1877 ; that appellee had no dealings with the firm before February 23d, 1876, the date of the first certificate in suit; that the appellant had done and permitted acts to be done with his knowledge, which led the appellee to believe that the appellant " was a member of said firm at the date of any of the instruments sued on," and that at said time the appellee had other notice or knowledge besides said advertisement, that the

appellant had been a partner, and during the time of his dealing with the firm, the appellee, through no carelessness of his own, acted without notice that the appellant had withdrawn, and believed that he was dealing with partners individually liable, and not with a corporate body. In view of these facts, it is clear that the general verdict in favor of the appellee is in accordance with the merits of the case, as shown at the trial, and that the adverse rulings of the court, so far as they appear to be at all questionable, produced no prejudicial result.

The judgment is therefore affirmed, with costs.

## On Petition for a Rehearing.

WOODS, J.—It is strenuously insisted that the second paragraph of the reply was not a good reply to all the paragraphs of answer to which it was addressed, and that, for the error of the court in overruling the demurrer to it, the judgment ought to be reversed.

The following extract from the appellant's original brief presents the question:

"The complaint is in eight paragraphs, each based upon a certificate for moneys deposited at different times, the last deposited in 1877. The first and second paragraphs are for money deposited in 1876. All the other deposits were made subsequently. The defendant, in his answer, says that he had retired before any of these deposits were made, and the plaintiff, before making the several deposits, had notice of his retirement. It is no reply to this answer to say that when plaintiff made the first deposit, sued upon in the first and second paragraphs of complaint, Uhl held himself out as a partner, and he had no notice of Uhl's retirement. If he had notice when he made the third, fourth, fifth, sixth, seventh and eighth deposits that Uhl had retired, Uhl would be entitled to recover upon those paragraphs."

The answers referred to were nothing but special argumentative denials, and there was no more propriety in replying to

them than to an answer of general denial. But, waiving this view, and allowing that a replication was admissible, and conceding, too, the soundness of the objection made to the paragraph in question, we still reach the same conclusion. The error in the ruling upon the demurrer was harmless. The answers of the jury to the interrogatories show affirmatively that, during the entire time of his dealings with the firm, the appellee, without notice of his withdrawal, acted in the belief that the appellant, whom he had before known to be a partner, was still a member of the firm.

If, therefore, the reply was too narrow, it is nevertheless clear that the verdict does not rest upon it, but upon proof abundantly sufficient and which was admissible independently of the bad paragraph; and, this being so, the error is not available. *The Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261; *Trammel* v. *Chipman,* 74 Ind. 474.

Rehearing denied, with costs.